**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
Matthew Daidola, Esq.
205 E Main Street, Ste. 3-2
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
matthew@talegalgroup.com
*Attorney for Plaintiff, FLSA Collective Plaintiffs,*
*and Class Members*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER MOINIAN,<br><br>Plaintiff,<br><br>- against -<br><br>EVENTS GROUP INTERNATIONAL, INC. d/b/a EVENTIQUE, AND AMELIA FRIEDMAN<br><br>Defendant. | **Case No.:**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Christopher Moinian ("Plaintiff or "Moinian"), by and through his undersigned counsel of record, TA Legal Group PLLC hereby files this Class and Collective Action Complaint ("Complaint") against Defendants Events Group International INC. d/b/a Eventique ("EGI"), and Amelia Friendman ("Friedman") (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1. Plaintiff Christopher Moinian, a former employee of Defendants, was subjected to a litany of wage and hour violations of the Fair Labor Standards ("FLSA") and New York Labor

Law (“NYLL”).

2. During the course of his employment, Moinian routinely worked over 40 hours per week and was deprived of overtime payment, in addition to other FLSA and NYLL violations, pursuant to a common policy that similarly affected him and other similarly situated employees.

3. Moinion repeatedly made requests to Defendants to provide the full compensation he earned, in compliance with the FLSA and NYLL. Defendants bluntly refused.

4. Furthermore, Defendants failed to provide adequate wage statements, depriving Moinion the ability to adequately contest his pay.

5. Moinion’s complaints about his pay resulted in his retaliatory termination by the Defendants in violation of the FLSA and NYLL’s anti-retaliation provisions.

## CLAIMS

6. Plaintiff seeks recovery under the FLSA for these egregious and continuous violations on behalf of himself and FLSA Collective Plaintiffs. Plaintiff and FLSA Collective Plaintiffs are entitled to recover damages from Defendants based on the following: (1) unpaid overtime, (2) liquidated damages, and (3) attorney’s fees and costs.

7. Plaintiff further alleges, pursuant to the NYLL, that he and Rule 23 Class Members are entitled to recover damages from Defendants for the following: (1) unpaid overtime, (2) liquidated damages, (3) statutory penalties for failing to provide wage notices in compliance with NYLL 195.1, and (4) statutory penalties for failing to provide wage statements in compliance with NYLL 195.3.

8. Plaintiff further individually alleges retaliation under the FLSA and NYLL.

9. Plaintiff further alleges, pursuant to the FLSA and NYLL, that he is entitled to damages, including back wages, front wages, emotional distress damages, punitive damages, liquidated damages, pre-judgment interest of 9%, and attorneys’ fees and costs, based on

retaliation for her protected complaints, culminating in Plaintiff's unlawful termination.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1337.

11. This Court possesses jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims in this District.

## PARTIES

### Plaintiff

13. Plaintiff Moinian is a resident of New York, NY.

### Defendant

14. **Defendant EGI**, an incorporated New York business, is an event production and creative agency headquartered in New York City. The company specializes in producing live, virtual, and hybrid experiences, including large-scale corporate conferences, product launches, non-profit galas, and social gatherings. EGI operates and does business as "Eventique".

15. **Defendant Friedman** is a manager at EGI and for all relevant times was Moinion's supervisor.

16. Friedman supervised Moinian, FLSA Collective Plaintiffs and Class Members and had control over the terms and conditions of Plaintiff's employment, and those of similarly situated employees, including, but not limited to, authority to (i) fire and hire, (ii) determine rate and method of pay and compensation of employees, (iii) adjust employee work schedules, (iv) maintain employees' employment records, and (v) otherwise affect the quality of employment.

### Defendants Compromise a "Single Integrated Enterprise"

17. For purposes of the FLSA and NYLL, Defendants constitute a single integrated

enterprise under common control. Operating under several trade names, including but not limited to, Eventique and Events Group International INC.. They are all engaged in related activities with a common business purpose. Facts supporting the assertion that Defendants operate as a single integrated enterprise include:

a. Defendants share a common business purpose of planning and producing entertainment and professional events.

b. Individual Defendant Friedman maintains either de facto or formal control of shared business objectives. Employees of Defendants are commonly subject to the same wage and human resources policies, subject to the same workplace rules and guidelines, and receive common on-boarding documents signed by Friedman on behalf of her corporate entities.

**CONDITIONS PRECEDENT TO SUIT**

18. This Court has personal jurisdiction over the Defendants in that they are incorporated in the state of New York, maintain a corporate headquarters in the State of New York, are domiciled in the state of New York, and/or are subject to personal jurisdiction under NY CPLR § 302, New York's long arm statute.

19. Corporate Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that employees of Defendants handle goods and materials produced outside of New York that moved in interstate commerce and the Defendants, as employers of such a business, are subject to the jurisdiction of the FLSA.

20. At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and any other Regulations thereunder.

21. At all relevant times, the work performed by Plaintiff and FLSA Collective Plaintiffs was directly essential to the business operated by Defendants.

22. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23. Plaintiff, on behalf of himself and all event planners, technicians, and other non-managerial employees employed by Defendants from six years prior to the filing of this Complaint, brings claims for relief as a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(B) ("FLSA Collective Plaintiffs").

24. Throughout the relevant period, Plaintiff and the FLSA Collective Plaintiffs were similarly situated, with nearly identical employment requirements and compensation structures, and subjected to Defendants' uniform decisions, policies, and practices. This consistent treatment has resulted in a willful failure to compensate employees for overtime work as required by law. The grievances articulated by Plaintiff herein mirror those affecting all FLSA Collective Plaintiffs.

25. This claim is appropriately filed and pursued as an opt-in collective action in accordance with Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The identities and contact information of the FLSA Collective Plaintiffs are accessible through Defendants, allowing for the issuance of notices via first class mail to their last known addresses as maintained by Defendants.

## RULE 23 CLASS ACTION ALLEGATIONS

26. Plaintiff seeks relief under Federal Rule of Civil Procedure 23 on behalf of a class consisting of on behalf of all event planners, technicians, and other non-managerial employees employed by Defendants, on or after the date that is six (6) years before the filing of the

Complaint in this action (hereafter "Class" or "Class Members").

27. Throughout the relevant periods, Plaintiff and Class Members have been similarly situated, sharing substantially similar job requirements, pay provisions, and subjected to Defendants' uniform decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules. This unified treatment resulted in widespread failures, in contravention of the NYLL, to pay Plaintiff and Class Members:

a. Regular wages;

b. Overtime wages;

c. Liquidated damages with respect to unpaid wages;

d. Liquidated damages for unlawfully delayed payments under NYLL § 191;

e. Failure to provide required wage notices and statements in compliance with NYLL § 195.1 and § 195.3, respectively.

28. The claims of Plaintiff stated herein are essentially the same as those of Class Members.

29. Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

30. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants there is no doubt that there are more than

forty (40) members of the Class. There are similarly more than forty (40) members of the subclass.

31. Defendants' enterprise-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

32. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff-Moinion and Class Member Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

33. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

34. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

35. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

36. There are questions of law and fact common to the Class which predominate, including:

a. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly.

b. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

c. Whether Defendants failed to compensate Plaintiff and Class Members for all hours worked.

d. Whether Defendants failed to pay Plaintiff and Class Members overtime pay for hours worked in excess of 40 each week.

e. Whether Defendants unlawfully failed to provide Plaintiff and Class Members wage notices in compliance with NYLL § 195.1.

f. Whether Defendants unlawfully failed to provide Plaintiff and Class Members wage statements in compliance with NYLL §195.3.

## STATEMENT OF FACTS

**Plaintiff's Employment with Defendants' "Bait and Switch" Scheme**

37. Plaintiff Christopher Moinian's employment with Defendants began on January 2, 2024.

38. Defendants formally designated Plaintiff as an "Event Producer" and paid him at an annual salary of $100,000. This was a calculated scheme to misclassify Plaintiff as exempt from overtime and thereby evade federal and state wage laws.

39. There was never any binding agreement between Plaintiff and Defendants that the salary compensation covered the many overtime hours that Plaintiff was required to work during his period of employment with Defendants.

40. The "economic realities" of Plaintiff's job duties and responsibilities were distinctly non-exempt. His primary duties were those of a technical operator and manual laborer.

41. Plaintiff was tasked with the physical and logistical execution of events, specifically the "tech and show" components, rather than the management of the enterprise. Moreover, Defendants actively trained Plaintiff to assume even "more technical roles" during his tenure, confirming that his value to the company lay in his manual production capabilities rather than executive decision-making.

42. This pattern of exploitation was further evidenced by Defendants' administrative conduct. Plaintiff was induced to sign an initial one-year contract and Defendants willfully failed to proffer a renewal contract upon its expiration. Defendants then maintained Plaintiff's employment in a precarious state, continuing to extract his labor under expired terms without providing the security or salary adjustments typically associated with a formalized managerial position.

43. Moreover, Defendants required Plaintiff to travel extensively, spending approximately 40% of his time traveling to physically execute events yet refused to compensate

him for the significant hours consumed by this travel. This demand for uncompensated travel time further reveals Defendants' intention to systematically deprive employees of their lawful wages.

44. Similarly situated FLSA Collective Plaintiffs and Class Members worked in excess of 40 hours per week on a regular basis to also meet the workload and travel demands of the Defendants. Moinian personally observed this pattern of behavior.

45. Furthermore, Moinian and Class received improper wage notices and/or wage statements from Defendant as required under NYLL 195.1 and NYLL 195.3, respectively. This only further deprived Plaintiff and Class the ability to adequately contest pay.

**Defendants' Actual Knowledge of Plaintiff's Excessive Workload**

46. Throughout his employment, Defendants imposed a work schedule on Plaintiff that far exceeded the standard forty-hour workweek. Although his nominal schedule hours were 10:00 AM to 6:00 PM, the operational demands of Defendants' business exceeded this. Plaintiff was regularly compelled to manage logistics, coordinate with vendors in varying time zones, and respond to communications well into the evening.

47. Throughout his period of employment, Plaintiff worked in excess of 40 hours per week, as did FLSA Collective Plaintiffs and Class Members.

48. Outside of the busy season, Plaintiff worked approximately 45-50 hours per week.

49. The intensity of Defendants' demands escalated significantly during the busy season. From September through November, Plaintiff routinely worked between 55 and 60 hours per week. On event days, the demands were even more extreme, with Plaintiff and his colleagues frequently working on-site shifts lasting up to 16 hours.

50. It was common and open knowledge that Plaintiff and similarly situated employees were required to work far in excess of 40 hours a week to fulfill Defendants' production

schedules.

51. Defendants cannot claim ignorance of these hours. The overtime work was performed openly and under the direct supervision of management. Plaintiff reported to the Director of Production and worked in close proximity to Defendants' leadership. Furthermore, the oppressive micromanagement style of Friedman generated a substantial contemporaneous record of his excessive hours.

52. Friedman required Plaintiff to copy him on all communications and provide constant status reports, thereby creating real-time documentary evidence that Plaintiff was working early mornings, late nights, and through scheduled breaks.

53. Despite possessing actual knowledge of this overtime work and Plaintiff's request for lawful payment, Defendants willfully refused to pay the time-and-a-half overtime rate required by the FLSA and NYLL.

54. Similarly, FLSA Collective Plaintiffs and Class Members were deprived of overtime.

**Plaintiff's Protected Complaints and Defendants' Retaliatory Campaign**

55. From September to November 2025, as the grueling demands of the busy season intensified, Plaintiff repeatedly engaged in protected activity by raising concerns to Friedman regarding his compensation. Specifically, Plaintiff objected to Defendants' practice of requiring him to work upwards of 60 hours per week, including working through breaks and late into the night, without overtime.

56. Rather than addressing these lawful complaints or rectifying the wage theft, Defendants viewed Plaintiff's assertion of his rights as a threat to their exploitative business model.

57. In response, Defendants purported to maintain a policy conditioning overtime pay

on the accumulation of 1,000 overtime hours within a single year - instead of paying for all overtime worked. This alleged policy - which was never provided in writing - is legally invalid on its face and speaks to Defendants' clear liability to Plaintiff, FLSA Collective Plaintiffs, and Class Members.

58. In direct retaliation for these complaints, Defendants, through the actions of Friedman, initiated a calculated campaign to manufacture cause for Plaintiff's termination. The temporal proximity between Plaintiff's opposition to Defendants' unlawful pay practices and the sudden deterioration of his working conditions is undeniable.

59. Friedman began to subject Plaintiff to intense and unwarranted scrutiny, "micromanaging" his daily tasks and demanding to be copied on all correspondence in a transparent attempt to find fault where none existed.

60. When this heightened scrutiny failed to yield legitimate grounds for discipline, Defendants escalated their retaliation by actively soliciting negative information about Plaintiff. Friedman began "fishing for dirt," interrogating other employees and clients in hopes of fabricating a performance issue.

61. Simultaneously, Defendants sought to isolate Plaintiff, systematically removing his support team and instructing colleagues to exclude him from meetings. This pattern of antagonism was not a management strategy, but a retaliatory effort to silence Plaintiff's complaints, culminating in his pretextual termination under the guise of a nonexistent "reorganization."

**<u>The Pretextual "Reorganization" and Wrongful Termination</u>**

62. Plaintiff performed his duties with diligence and competence, receiving positive performance evaluations throughout his tenure, including a favorable review as late as July 2025. The company continued to express satisfaction with Plaintiff's work.

63. The trajectory of Plaintiff's employment shifted not due to performance, but following the arrival of Friedman who subjected him to a campaign of hostility and isolation. Friedmand seemingly intent on purging the existing department, systematically forced out Plaintiff's entire team.

64. Once Plaintiff was isolated, the manager sought to manufacture grounds for his removal by soliciting negative feedback from colleagues and clients, essentially "fishing for dirt" and subjecting him to aggressive micromanagement. In part this was retaliation for Moinian's protected wage complaints.

65. On November 13, 2025, Defendants executed the final stage of retaliation. Plaintiff was invited to a video conference scheduled as a routine weekly check-in with a colleague. Unbeknownst to Plaintiff, Defendants instructed the colleague via text message not to attend the scheduled meeting. Instead, Plaintiff was ambushed by Friedman and a representative from a third-party Human Resources firm.

66. Defendants terminated Plaintiff effective immediately, asserting that his termination was a "layoff due to reorganization" and claiming there was "no room for his position anymore". This justification was demonstrably false and pretextual.

67. The termination was clearly premeditated. Defendants stated during the call that a courier was already on the way to Plaintiff's home to collect Defendants' work property. Followed by Defendants attempt to pressure Plaintiff into signing a Separation Agreement offering nominal severance in exchange for a release of claims.

68. The pretextual nature of the "reorganization" was definitively exposed weeks later. Despite explicitly telling Plaintiff his role had been eliminated, Plaintiff observed a job posting from Defendants on LinkedIn for a position with a description essentially identical to the one he had held. Defendants did not offer this position to Plaintiff, despite his established

qualifications.

69. Furthermore, Defendants retained another employee who held the exact same title and position as Plaintiff, proving that the position itself was never actually eliminated.

70. Defendants' conduct of misclassifying Plaintiff to extract unpaid overtime, subjecting him to a hostile work environment designed to force his departure, and ultimately terminating him for protected complaints under false pretenses. constitutes a willful violation of the FLSA, NYLL, and New York Common Law.

71. Plaintiff retained TA Legal Group PLLC as counsel to represent Plaintiffs and FLSA Collective Plaintiffs in this litigation and agreed to pay the firm a reasonable fee for its service.

**Plaintiff, FLSA Collective Plaintiffs and Class Members Are Non-Exempt**

72. During his employment by Defendants, Plaintiff was at all times non-exempt from the overtime requirements of the FLSA or NYLL.

73. Exemptions from the FLSA's minimum wage and overtime requirements are affirmative defenses. Defendants bear the burden of proving that Plaintiff and his proposed Collective and Class fit plainly and unmistakably within the terms of a specific exemption. *See Flood v. Just Energy Mktg. Corp., 904 F.3d 219, 227 (2d Cir. 2018)*. Defendants cannot meet this burden because Plaintiff's primary duties did not satisfy the strict regulatory requirements of either the Executive or Administrative exemptions.

74. Plaintiff, FLSA Collective Plaintiffs and Class Members were non-exempt under the Executive Exemption 29 C.F.R. § 541.100 because: (1) their primary duty was production, not management, and they did not direct the work of two or more employees; (2) they lacked authority to hire or fire, and their personnel recommendations were given no weight; and (3) Defendants' rigid 'operational model' left them with no true managerial autonomy

75. Furthermore, Defendants cannot claim the Administrative Exemption under 29 C.F.R. § 541.200 because Plaintiff,. FLSA Collective Plaintiffs, and Class Members lacked the requisite *discretion and independent judgment with respect to matters of significance*. Plaintiff's primary duty was production rather than high-level administration. Far from exercising independent judgment, Plaintiff performed mechanical, routine duties strictly governed by predetermined workflows and Defendants' unilateral demands for uncompensated time

76. Even if Defendants attempted to classify these employees as salaried-exempt, that classification is defeated by Defendants' actual practice. By enforcing a "unilateral demand for uncompensated time" and premising their model on the deprivation of wages, Defendants treated Plaintiff and FLSA Collective Plaintiffs as hourly laborers subject to wage theft, effectively destroying the "salary basis" required for any white-collar exemption.

**Plaintiff, FLSA Collective Plaintiffs, and Class Members Were Employees, As Opposed To Independent Contractors**

77. Plaintiff was an employee for FLSA and NYLL purposes, as opposed to an independent contractor.

78. The "economic realities test" is used in New York to determine if an individual is an employee under the FLSA. Under that test, and employee is protected under the FLSA and NYLL if the employer (1) had the power to hire and fire, (2) supervised and controlled the employee's work schedule and conditions, (3) determined rate and method of payment, and (4) maintained employment records. *See Matter of Carver v. State of N.Y., 2015 NY Slip Op 08451, 26 N.Y.3d 272, 23 N.Y.S.3d 79, 44 N.E.3d 154.*

79. Defendants exercised significant control over Plaintiff's work and that of FLSA Collective Members and Class Members demonstrating employee status.

80. Plaintiff was subject to Defendants' rules and policies and received limited

discretion in terms of performing assigned duties. Plaintiff was directly supervised by Defendant Friedman, who issued direct instructions and reprimands to Plaintiff, fellow event planning workstaff, and other non-exempt event production employees. Further requiring all aforementioned employees be physically present each day and work at least 10am to 6pm.

81. Employee status is also reflected by Defendants' exerted control over the specific manner in which Plaintiff, fellow event planning workstaff, and non-exempt event production employees were permitted to perform their jobs and the limits and opportunities to profit.

82. Last, Defendants ultimately terminated Plaintiff in November 2025.

83. The years long duration of employment of Plaintiff and low degree independent initiative required for the position also point to an employee status rather than independent contractor status.

84. The same applies to FLSA Collective Plaintiffs and Class Members.

## CAUSES OF ACTION

### COUNT I - VIOLATION OF FLSA, 29 U.S.C. Section § 207(a) and NYLL § 651 et seq. Plaintiff, FLSA Collective Plaintiffs, and Class Members Are Entitled To Recover Unpaid Overtime

85. Throughout his respective employment period, Plaintiff worked in excess of 40 -hours each workweek, but was never paid overtime.

86. There was never any agreement that Plaintiff's compensation under the employment contract and Plaintiff was clearly performing manual labor as a tech and logistics specialist.

87. Aforementioned, the demand Defendants put their employees required the employees to work beyond 40-hours per week. These hours were recorded and Defendants were apprised and aware of the added hours their employees worked. Regardless of their awareness, Defendants willfully failed to compensate employees overtime pay.

88. Defendants purported to enforce a policy where overtime compensation was contingent upon an employee working 1,000 overtime hours in a single year. This policy was illusory on its face as Defendants established no procedures to track, measure, or audit progress toward this arbitrary benchmark, rendering the promise of overtime pay functionally impossible to fulfill.

89. Based on Plaintiff's observations and conversations, FLSA Collective Plaintiffs likewise worked in excess of 40-hours per week and were similarly not paid overtime as required under the FLSA and NYLL.

90. As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiffs are further entitled to liquidated (i.e., double) damages. *See Hardgers-Powell v. Angels In Your Home LLC*, No. 16-CV-6612-FPG, (W.D.N.Y. Oct. 4, 2019) (finding Defendant-employers were statutorily required to pay overtime wages and liquidated damages were proper for NYLL claims); *Robertson v. Trinity Packaging Corp.*, No. 19-CV-659-JLS-LGF, 2025 LX 332139 (W.D.N.Y. Aug. 5, 2025) (liquidated damages were proper in the event of an employer's wilful NYLL violation).

91. Therefore, Plaintiff and FLSA Collective Plaintiffs are entitled to recovery of back pay, liquidated damages, civil money penalties, 9% pre-judgment interest, and attorney's fees.

**COUNT II - VIOLATION OF NEW YORK LABOR LAW § 195.1 and § 195.3**
**Defendant Failed to Provide Proper Wage Statements and Notice**

92. Defendants knowingly and willfully operated with a policy of not providing a proper wage notice and proper wage statements to Plaintiff at the beginning of her employment, annually thereafter, and in all relevant times, in violation of the applicable state wage laws.

93. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest

identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See N.Y. Spons. Mem., 2010 S.B. 8380.*

94. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

95. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and actually harmed Plaintiff. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class Members' rights.

96. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Plaintiff and Class Members are therefore entitled to statutory damages and attorney's fees and costs.

**COUNT III - RETALIATION IN VIOLATION OF THE FLSA 29 U.S.C. § 215(a)(3)**
**Unlawful Retaliation On Behalf of Plaintiff Individually Against All Defendants**

97. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

98. The FLSA's anti-retaliation provision makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."

99. The Second Circuit has clearly established that this protection extends to internal oral complaints made by an employee to their employer, provided the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015).

100. Plaintiff engaged in protected activity by repeatedly complaining to Friedman and management about Defendants' unlawful failure to pay him overtime wages. Specifically, during the busy season, September - December, Plaintiff weekly complained to Friedman that he was required to work upwards of 60 hours per week, including working through mandated meal breaks and late into the night, without receiving the time-and-a-half compensation to which he was entitled. These complaints were not mere "grumbles in the hallway," but clear assertions that he was being forced to work uncompensated hours in violation of his rights. *See Greathouse*, 784 F.3d at 116 (finding oral complaint to supervisor that employee had not been paid was sufficient to state a retaliation claim).

101. Defendants were fully aware of Plaintiff's protected activity. His complaints were directed to his immediate supervisor and the management team responsible for his compensation. Furthermore, Friedman's subsequent aggressive micromanagement and demands to be copied on all correspondence and constantly monitoring Plaintiff's whereabouts demonstrates Defendants' acute awareness of his opposition to their exploitative practices.

102. Defendants took decisive adverse action against Plaintiff culminating in the termination of his employment on November 13, 2025. Prior to termination, Defendants subjected Plaintiff to a campaign of retaliatory hostility intended to force his resignation. This included the systematic removal of his support team, his exclusion from key meetings, and the "fishing expedition" by his new manager to solicit negative feedback from colleagues and

clients. *See Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (noting that adverse actions can include conduct that dissuades a reasonable worker from making a charge of discrimination).

103. There is a direct causal nexus between Plaintiff's protected complaints and his termination. The temporal proximity between his complaints about unpaid overtime and the sudden deterioration of his working conditions establishes a prima facie case of retaliation. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (holding that very close temporal proximity between protected activity and adverse action is sufficient to establish a prima facie case of causation). The adverse actions began shortly after Plaintiff asserted his rights, escalating rapidly from micromanagement to termination.

a. **Inconsistencies and Falsehoods:** A plaintiff may prove retaliation by demonstrating "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons." *Zann Kwan*, 737 F.3d at 846. Here, Defendants claimed Plaintiff's position was eliminated, yet merely weeks later, they posted a job opening on LinkedIn for a role with a description essentially identical to the one Plaintiff held.

b. **Retention of Similarly Situated Employees:** Defendants retained another employee who held the exact same title and position as Plaintiff, further belying the claim that the "position" was eliminated.

c. **Premeditation:** The fact that Defendants had already dispatched a courier to Plaintiff's home to collect his property *before* the termination meeting reveals that the decision was a premeditated strike rather than a reluctant business necessity.

104. But for Plaintiff's protected complaints regarding unpaid overtime, he would not have been terminated. The "reorganization" was a sham created specifically to dispose of an

employee who dared to challenge Defendants' illegal wage practices.

105. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer significant damages, including lost wages, lost benefits, and severe emotional distress. Plaintiff is entitled to recover all available remedies under 29 U.S.C. § 216(b), including lost wages, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs.

**COUNT IV - RETALIATION IN VIOLATION OF NEW YORK LABOR LAW § 215**
**Unlawful Retaliation On Behalf of Plaintiff Individually Against All Defendants**

106. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

107. Defendants retaliated against Plaintiff for engaging in protected activities in violation of NYLL § 215. This statute prohibits an employer or their agent from discharging, threatening, penalizing, or in any other manner discriminating or retaliating against an employee because such employee has "made a complaint to his or her employer… that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

108. The burden for establishing a retaliation claim under the NYLL is similar to that under the FLSA, requiring the plaintiff to show: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *Copeland v. Rosen*, 38 F. Supp. 3d 298, 307 (S.D.N.Y. 2014).

109. Plaintiff engaged in protected activity under the NYLL by making repeated,

good-faith complaints to Defendant's management regarding their failure to pay him for all hours worked. Specifically, Plaintiff protested the "bait and switch" scheme wherein Defendants classified him as exempt but required him to perform the manual and technical labor of a non-exempt employee for up to 60 hours per week without overtime compensation. These complaints, directed at his supervisors, constituted a clear opposition to Defendants' violation of New York's wage and hour laws. *See Higueros v. N.Y. State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) (holding that an internal complaint to an employer regarding a violation of the Labor Law is protected activity).

110. In response to Plaintiff's assertion of his statutory rights, Defendants subjected him to a series of adverse actions designed to punish him and manufacture grounds for his removal.

a. **Hostile Work Environment:** Following his complaints, Friedman initiated a campaign of harassment, including aggressive "micromanagement," demanding to be copied on all emails, and actively "fishing" for negative feedback from clients and colleagues to tarnish Plaintiff's record.

b. **Termination:** On November 13, 2025, Defendants formally terminated Plaintiff's employment, the ultimate adverse action. *See Zelman v. Jewish Community Center of Staten Island, Inc.*, No. 13-CV-5953, 2015 U.S. Dist. LEXIS 168673, at *22 (E.D.N.Y. Dec. 16, 2015) (termination is the quintessential adverse employment action).

111. The causal link between Plaintiff's protected complaints and his termination is established by the close temporal proximity between the two events. Defendants began their campaign of micromanagement and isolation immediately after Plaintiff pushed back against the uncompensated overtime demands of the busy season. This escalation culminated rapidly in his firing, creating a strong inference of retaliatory intent. *See Kreinik v. Showbran Photo, Inc.*,

2003 WL 22339268, at *8 (S.D.N.Y. Oct. 14, 2003) (finding a causal connection where termination occurred shortly after the plaintiff complained about unpaid wages).

112. Defendant's proffered excuse of a "reorganization" and lack of work was both pretextual and false.

a. **Job Posting Evidence:** Weeks after telling Plaintiff his position was eliminated due to a "reorganization," Defendants posted a job opening on LinkedIn for a role with a description materially identical to the one Plaintiff held.

b. **Retention of Similarly Situated Staff:** Defendants retained another "Event Producer" who performed the strikingly identical duties as Plaintiff, proving that the role itself was not obsolete.

c. **Premeditation:** The punitive nature of the termination was underscored by Defendants' dispatching of a courier to Plaintiff's home to collect company property *before* the termination meeting had even concluded, revealing a premeditated intent to oust a complaining employee rather than a genuine business restructuring.

113. Accordingly, Moinian is entitled to back pay, front pay, liquidated damages, 9% pre-judgment interest, and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and FLSA Collective Plaintiffs, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid overtime wages under the FLSA and NYLL;

d. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

e. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

f. 9% prejudgment interest

g. An award of damages for failure to provide wage statements and notices under the NYLL;

h. An award for damages for retaliation pursuant to FLSA and NYLL;

i. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j. Designation of Plaintiffs as the Representatives of the FLSA Collective Plaintiffs;

and,

k. Such other relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: Huntington, NY
March 13, 2026

**TA LEGAL GROUP PLLC**
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and Class*

By: ______________________________
Taimur Alamgir, Esq.
Matthew Daidola, Esq.
205 East Main Street, Suite 3-2
Huntington, NY 11743
Tel. (914) 552-2669
tim@talegalgroup.com